IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                             Cr. No. 04-888 LH (ACE)

DAVID PETTIGREW,

      Defendant.

## MOTION TO SUPPRESS STATEMENTS

The defendant, David Pettigrew, through his counsel, Michael A. Keefe, Assistant Federal Public Defender, pursuant to Federal Rule of Criminal Procedure 12(b)(3) moves this Court to suppress a) any statements made by David Pettigrew to San Juan County Deputy Sheriff Anthony Ashcroft on April 18, 2004; b) any statements made by David Pettigrew to Navajo Tribal Officer Ronald Williams on April 18 or 19, 2004; c) any other statements made by David Pettigrew on April 18 or 19, 2004, and d) any evidence obtained directly or indirectly from the statements made by David Pettigrew on April 18 or 19, 2004.

As grounds, counsel states:

1.     On April 18, 2004, David Pettigrew was taken into custody shortly after an accident on U.S. Highway 64 near Hogback, San Juan County, New Mexico. The automobile accident, which is the basis for the charges filed in this matter, occurred near mile post 29.2 on Highway 64. Shortly after the accident, a white truck was found in a

field just south of mile post 31 along Highway 64.  This truck was discovered to belong to Mr. Pettigrew.  The truck was found at about 10:30 p.m. on April 18, 2004.

2. Mr. Pettigrew was located (shortly after the truck was found) in a ravine near the field where the truck was left.  It appeared that the truck belonging to Mr. Pettigrew had been involved in the accident at mile post 29.2.  The area where Mr. Pettigrew was located is near his house.

3. The defendant was located by Deputy Anthony Ashcroft with the San Juan County Sheriff's Department.  Deputy Ashcroft indicated in his report that

> "As I got closer to the area, I observed the suspect look up.  I ran over to him as he was trying to get up, and placed him in handcuffs.  After I did a pat search for weapons, I keyed my radio to advise dispatch I had a suspect in custody... I removed his wallet and found a New Mexico ID card which identified him as David Pettigrew.  I could smell the strong odor of an alcoholic beverage he was also intoxicated to the extent that it was difficult for him to stand on his feet and was unable to do so for any period of time."

4. Deputy Ashcroft also stated the following in his report, "I asked the suspect if he knew what he did."  He stated, "yeah, I fucked up my ride, now I got to get a new one."  I told him he might have killed somebody in the accident, he responded by saying, "I still got to get a new ride."

5. Deputy Ashcroft also reports that "while I was assisting Pettigrew in walking back, he also stated, "did you tell my PO I crashed?"  While walking Pettigrew was unable to maintain his balance and fell twice.

6. Navajo Tribal Police Officer Ronald Williams reports that around the same time that Mr. Pettigrew was taken into custody, he approached Deputy Ashcroft and Mr. Pettigrew and Mr. Pettigrew had been cussing at the officers. In addition, Officer Williams reports that the defendant called Ashcroft a "white shit" and told him "let me be taken by my own people, let me go with him." Officer Williams also reports that the defendant had a very strong odor of liquor coming from his breath and his person. The defendant also spoke with very slurred speech while he was cussing at the deputies.

7. Mr. Pettigrew was placed under arrest and transported to the Shiprock detention facility by Officer Williams. Officer Williams reports that he heard someone, presumably a police officer, ask the defendant if he had been drinking that night and Mr. Pettigrew responded, "yes, I was drinking." Mr. Pettigrew responded to questions asked about whether he would take the intoxilyzer machine test to determine how much alcohol was in his system and the defendant stated, "that's okay, I'll take it." The test showed Mr. Pettigrew to have a blood alcohol level of .24.

8. As he was taking the intoxilyzer test, Officer Williams reports that Mr. Pettigrew asked Williams why he was arrested and what the charges were. Officer Williams informed the defendant that he had been arrested for DUI and because he was involved in an accident and people had possibly got hurt. Pettigrew also told Officer Williams when talking about the accident, "I saw it last minute. I hit it and took off."

Officer Williams also reports that while at the Shiprock detention facility for the intoxilyzer test that Mr. Pettigrew stated on his own that he did not see the other vehicle and did not know what happened. He just said that it was just in front of him and he hit it.

9. An inmate at the Shiprock Detention Center Wayne Benally also indicates that Mr. Pettigrew stated to him, "I was drinking for nothing and I damaged my vehicle. It's okay, I'll get another truck." The defendant also reportedly asked Mr. Benally what the sentence was for aggravated assault.

10. Later, on the morning of April 19, 2004, when David Pettigrew was asked to sign the traffic citations, from the previous night's accident, Mr. Pettigrew asked what happened. He also asked, "why all this, did somebody die?" When he was informed that somebody had in fact died at the scene of the accident, Mr. Pettigrew said, "fuck" and dropped his head on the table.

11. On April 19, 2004, at 2:10 p.m., Navajo Tribal Criminal Investigator Sammy Ahkeah contacted the defendant at the Shiprock Detention Center for an interview. Mr. Pettigrew was transported to the Criminal Investigation Services Office in Shiprock and taken to an interview room. After Criminal Investigator Sammy Ahkeah identified himself, he informed Mr. Pettigrew of the charges he was facing and explained to Mr. Pettigrew his constitutional rights. Mr. Pettigrew at that time indicated that he understood his rights and refused to provide a statement and

requested a lawyer. The questioning ended at that point. In addition, an Advise of Rights form was filled out and on the signature line for Mr. Pettigrew to waive his rights are written the words "requested a lawyer." See attached Advise of Rights form. This was the first and only time that Mr. Pettigrew is aware of having been informed of his rights.

12. Upon information and belief, no law enforcement officer had advised David Pettigrew of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) until the formal questioning at 2:10 p.m. on April 19, 2004.

13. Mr. Pettigrew was immediately handcuffed and taken into custody when he was located in the ravine near his house. The interrogation that followed was clearly custodial and the defendant was kept in custody and was not free to leave at any time after that. *Oregon v. Mathieson*, 429 U.S. 492 (1977). The United States Supreme Court in the case of *Miranda v. Arizona*, 384 U.S. 436 (1966) promulgated a set of safeguards to protect the delineated constitutional rights of a person subjected to custodial police interrogation. The court held in *Miranda* that unless law enforcement officers give a certain specified warning before questioning a person in custody and follow certain specified procedures in the course of any subsequent interrogation, any statements made by the person in custody can not be admitted into evidence against him.

14. Because Mr. Pettigrew made incriminating statements during a custodial interrogation without being afforded his *Miranda* rights warning, his statements to law enforcement officers must be suppressed.

15. Although some time passed between the initial statements made at the scene of Mr. Pettigrew's initial detention and statements made while at the Shiprock Detention Center, those later statements were elicited by the officers and/or were tainted by the original unlawful interrogation of Mr. Pettigrew.

16. Mr. Pettigrew never knowingly, intelligently or voluntarily waived his rights against self incrimination. The Court should take into consideration the defendant's physical condition on the night of April 18 and the early hours of April 19, 2004. Once Mr. Pettigrew had an opportunity to rest and was no longer intoxicated and the first time he was advised of his constitutional rights, he invoked his Fifth Amendment privilege to remain silent and to have the assistance of counsel.

17. Mr. Pettigrew hereby requests an evidentiary hearing in order to present evidence in support of his motion for suppression of the statements.

18. In connection with the request for an evidentiary hearing, defense counsel hereby requests pursuant to Federal Rules of Criminal Procedure 12(h) and 26.2 that the government supply the prior statements including grand jury testimony of the suppression hearing witnesses including but not limited to San Juan County Sheriff's Deputy Anthony Ashcroft and Navajo Tribal Police Officer Ronald Williams as well

as Navajo Tribal Investigator Sammy Ahkeah at least 48 hours prior to the evidentiary hearing in this matter in order to avoid unnecessary recesses during the course of the suppression hearing.

19. United States Attorney's Office through Assistant United States Attorney Samuel Winder opposes this motion.

WHEREFORE defense counsel requests for the reasons stated that the statements given by David Pettigrew on April 18 and April 19, 2004, and any evidence derived from those statements be suppressed.

Respectfully submitted,

I hereby certify that a true copy of the foregoing pleading was placed in the in box of AUSA Samuel Winder at the Clerk's Office of the U.S. District Court this 27th day of August, 2004.

FEDERAL PUBLIC DEFENDER
111 Lomas NW, Suite 501
Albuquerque, NM 87102
(505)346-2489

  [electronically filed]

   [electronically filed]
MICHAEL A. KEEFE, AFPD
Attorney for Defendant